JOHN PRODROMOS *et al.*, Indiv. and d/b/a G&J Company, *et al.*, Plaintiffs and Counterdefendants-Appellants, v. FORTY EAST CEDAR CONDOMINIUM ASSOCIATION, Indiv. and f/u/a/b of its Members, Defendant and Counterplaintiff-Appellee (Patrick J. Halperin *et al.*, Defendants-Appellees).

First District (1st Division)   Nos. 1—92—3316, 1—92—3549 cons.

Opinion filed May 2, 1994.—Rehearing denied July 25, 1994.

Collins & Bargione, of Chicago (George B. Collins and Gregory A. Bedell, of counsel), for appellants.

Steinberg & Steinberg, Ltd., of Chicago (Charles M. Steinberg and Frances S. Steinberg, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs/counterdefendants, John Prodromos and Debra Prodromos, individually and d/b/a G&J Co., and Glenview State Bank, as trustee under trust agreement No. 1808 (plaintiffs or Prodromos), owners of the "unit garage" at the Forty East Cedar Condominium Building (Building), and defendants, the Forty East Cedar Association (Association), Patrick J. Halperin and Mary Billington, brought cross-declaratory judgment actions to determine the validity of the

Association's amendments to the declaration of condominium governing parking facilities (Amendments), which regulate the parking facilities within the building. The Amendments restrict the number of rental spaces in the unit garage available to nonresidents of the building and require that the monthly parking fees charged to building residents not exceed the "neighborhood fair market value." On September 18, 1992, the trial court entered summary judgment in favor of the Association on counts I and II of its countercomplaint, declaring the Amendments valid and enforceable and permanently enjoining plaintiffs from (1) renting more than nine parking spaces in the unit garage to nonresidents; and (2) from refusing to rent unit garage spaces to building residents at rates not exceeding fair market value. The trial court also entered summary judgment in favor of the Association on count I of plaintiffs' complaint for antitrust violations regarding the monthly parking fee. Plaintiffs now appeal the order of the trial court. For the following reasons, we affirm in part and reverse in part.

The following facts are relevant to this appeal. Forty East Cedar is a 75-unit condominium building located in the Gold Coast neighborhood of Chicago. The Building was built in 1967 and contains an indoor parking garage with 39 parking spaces (unit or lower garage) and an outdoor rooftop parking area with 14 spaces (upper garage), for a total of 53 parking spaces. The 14 spaces of the upper garage are operated as the "common elements" of the building and maintained by the Association. The Building has been subject to the provisions of the Illinois Condominium Property Act (Ill. Rev. Stat. 1979, ch. 30, par. 300 *et seq.* (now 765 ILCS 605/1 *et seq* (West 1992))) (Condominium Act), since it was converted from apartments to condominiums in 1979.

In addition, at all relevant times the Building has been subject to section 7.12 of the City of Chicago Zoning Ordinance (Chicago Municipal Code ch. 194A, § 7 *et seq.* (1991)) (the Ordinance), which defines the Building as located in an R-7 residential zoning district. In 1969, the Ordinance required that buildings in an R-7 District have "accessory parking" for 60% of the number of dwelling units. In 1971, the Ordinance was amended to require that R-7 district buildings have

> "parking spaces equal in number to 100 percent of the number of dwellings units *** for the first 50 units located within a building, and additional parking spaces equal in number to 55 percent of the number of dwelling units *** exceeding 50 units." (Chicago Municipal Code ch. 194A, § 7.12—3(2) (1991).)

Thus, the Ordinance requires that the Building have available 64

spaces (63.5), excusing the 11-space deficiency as a preexisting nonconforming use. (Chicago Municipal Code ch. 194A, § 6.2 (1991).) The Ordinance further provides:

"[N]ot more than 25 per cent of the accessory parking spaces required for a dwelling, lodging house, or a hotel may be rented out on a monthly basis to occupants of other dwellings, lodging houses, or hotels." Chicago Municipal Code ch. 194A, § 7.12(1) (1991).

In addition, operating a "public parking garage" is not a permitted use for the Building. See Chicago Municipal Code ch. 194A, § 7.3—7 (1991).

The record reveals that prior to the injunction entered September 18, 1992, plaintiffs rented the 39 available parking spaces in the lower garage on a monthly basis to residents of the building, as well as to nonresidents, for $175. The record indicates that plaintiffs rented at least 14 and up to 19 spaces of the lower garage to nonresidents.

Beginning in August 1990, the Association attempted to stop plaintiffs from renting spaces to nonresidents in excess of the number allowed under the Ordinance. On May 29, 1991, the 75 unit owners of the Building adopted the declaration of condominium amendment governing parking facilities (Amendments). The "Non-Resident Parking Restriction" (Space Restriction) restricts the rental of the spaces in the lower and upper garages, limiting spaces available to nonresidents of the building to a maximum of nine spaces in the lower garage, and four spaces in the upper garage. (25%). The "Neighborhood Fair Market Value Parking Fee Restriction" (Fee Restriction) requires that the monthly parking fees charged building residents not exceed the "neighborhood fair market value."

On May 21, 1991, plaintiffs filed a four-count complaint for declaratory judgment and antitrust violations against the Association. On September 6, 1991, plaintiffs filed an amended complaint in 10 counts, count I consisting of allegations of antitrust, and counts II through VII requesting declaratory relief. In count I, plaintiffs alleged that the Fee Restriction amounted to price fixing in violation of the Illinois antitrust act. In counts II through VII, plaintiffs sought declaratory relief from, *inter alia*, the Association's alleged discriminatory treatment; deprivation of property without due process; improper use of the Ordinance; improper imposition of fines; and the adoption of the Amendments.

The Association filed a counterclaim seeking to enjoin plaintiffs from continuing to violate the Amendments and to foreclose a lien against the plaintiffs' property arising out of, in part, the fines levied against the plaintiffs for noncompliance with the Amendments.

Both parties filed cross-motions for summary judgment on all counts, culminating in a hearing on September 18, 1992. During arguments, plaintiffs' counsel conceded that the Ordinance provided that only nine parking spaces could be leased to nonresidents, but explained that because residents were not renting all of the available spaces, plaintiffs rented the spaces to nonresidents.

Following arguments, the trial court made the following findings of fact: (1) the Amendments are legally reasonable, valid and enforceable; (2) there is no dispute that plaintiffs have been violating the provisions of the Amendments by renting in excess of nine parking spaces to nonresidents of the building, and by charging residents $175 per parking space per month, despite a determination that rates could not presently exceed neighborhood fair market value of $125 per month; and (3) the plaintiffs have been renting from 14 to 19 parking spaces each month to nonresidents of the building in violation of the zoning ordinance provided in the Chicago Municipal Code.

The trial court entered an order for summary judgment in favor of the Association, permanently enjoining plaintiffs from: (1) renting more than nine parking spaces in the lower garage to nonresidents; and (2) refusing to rent lower garage spaces to building residents at rates not exceeding fair market value "as determined pursuant to the Second Amendment to the Declaration of Condominium." In addition, the trial court denied plaintiffs' motions for summary judgment on count III of the Association's countercomplaint and on count VII of plaintiffs' amended complaint for declaratory judgment regarding payment of garage repairs. Finally, the trial court ordered that all other counts not disposed of remain pending before the trial court.

Plaintiffs' timely appeal of the trial court's order followed.

At the outset, we note that the parties failed to confine their respective briefs to the matters properly before this court on appeal. Both parties' briefs contain extraneous arguments which appear to go far beyond the issues properly before this court. We therefore address herein only the issues properly before this court on appeal.

■ We first address plaintiffs' contention that the Ordinance permits them to rent 19 parking spaces to nonresidents of the building. Plaintiffs argue that the Space Restriction, which allows a maximum of only nine parking spaces in the lower garage to be leased to nonresidents, represents an incorrect interpretation of the Ordinance. We note that this argument of plaintiffs' appears for the first time on appeal, as this issue was not raised in the trial court.

An issue not presented to or considered by the circuit court

cannot be raised on review for the first time. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 732, 523 N.E.2d 30.) The record reveals that at the summary judgment hearing, plaintiffs' counsel specifically conceded that the Ordinance allowed for only nine spaces to be rented to nonresidents and that plaintiffs were violating the Ordinance. The transcript of the hearing reveals the following exchange:

> "THE COURT: Do you agree that there is—there is this restriction of making this accessible on the nine parking spaces to nine nonresidents?
>
> MR. RUDD: Yes.
>
> . THE COURT: Does your client abide by that?
>
> MR. RUDD: No.
>
> THE COURT: Okay. Why?
>
> MR. RUDD: Why, because there are empty spaces and my client is renting it. He gives the unit owner the opportunity to rent the spaces. When no one comes forward to rent the spaces, he rents to somebody else."

We therefore find that plaintiffs have waived this argument for review.

■ Next, we address the trial court's determination regarding the Fee Restriction portion of the Amendments, which enjoins plaintiffs from refusing to rent lower garage spaces to building residents at rates not exceeding fair market value "as determined pursuant to the Second Amendment to the Declaration of Condominium." Plaintiffs contend, *inter alia*, that the trial court's judgment was in error because the Fee Restriction amounts to illegal "price fixing" in violation of the Illinois antitrust act.

The purpose of summary judgment is not to try a question of fact, but rather to determine whether one exits. (*Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 529 N.E.2d 552.) A motion for summary judgment appropriately is granted if the pleadings, depositions, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Addison*, 124 Ill. 2d at 294, 529 N.E.2d at 555; Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c) (now 735 ILCS 5/2—1005(c) (West 1992)).) Summary judgment is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt the movant's right to relief. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867; *Estate of Jesmer v. Rohlev* (1993), 241 Ill. App. 3d 798, 805, 609 N.E.2d 816.) An order granting summary judgment will be reversed if the reviewing court finds the existence of a genuine issue of material fact. *Jesmer*, 241 Ill. App. 3d at 805.

The order of the trial court recites the following finding of fact:

"3. There is no genuine dispute of fact that the counter-defendants * * * have been disregarding and violating [the Amendments] * * * by charging residents of the condominium $175 per parking space per month notwithstanding the fact a determination was made pursuant to the aforedescribed condominium instruments that rates could not presently exceed neighborhood fair market value of $125 per month."

Despite this finding, the record reflects that the trial court did not make any determination of the fair market value of parking spaces. Although the record includes a survey of neighborhood parking rates compiled by the Association, the parties concede that the trial court, in fact, left open the issue of determination of fair market value. This is evidenced by the following statement of the court at the hearing:

"If the party in whose favor I issued the summary judgment feels that there is a violation of the Court's order that there should not be any charge that exceeds the fair market value and brings that matter to the petition for rule to show cause, then that is when the issue will be decided as to whether the Court's order has been violated or not."

In our view, the record indicates that a genuine issue of material fact remains regarding the Fee Restriction portion of the Amendments, especially pertaining to the determination of fair market value. We make no determination on the issue of fair market value, nor do we suggest what might be an appropriate determination. We therefore find summary judgment in error on this issue, and vacate that portion of the trial court's order enjoining plaintiffs from renting parking spaces to Building residents at rates "exceeding neighborhood fair market value." Under these circumstances, we need not reach the additional issues raised by the parties regarding the Fee Restriction portion of the Amendments.

For the reasons set forth above, we affirm in part and reverse in part.

Affirmed in part; reversed in part.

BUCKLEY and MANNING, JJ., concur.